UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| The United States of America for the use and benefit of Gecon Construction Incorporated,<br><br>　　　Plaintiff,<br><br>v.<br><br>Visionary Construction, Inc. d/b/a Visionary Services; Great Midwest Insurance Company; First Standard Asurety, LLLP; Surety Company "A;" and Insurance Company "B;"<br><br>　　　Defendant. | Case No.<br><br>*Collection of Money*<br>　*Miller Act*<br>　*Breach of Contract*<br>　*Equitable Estoppel*<br>　*Unjust Enrichment*<br>　*Damages* |

## **COMPLAINT**

Plaintiff United States of America for the use and benefit of Gecon Construction Incorporated ("Gecon" or "Plaintiff"), by and through its attorneys, avers, states, and prays as follows:

### I.  Jurisdiction and Venue

1.　This action is brought under the Miller Act, 40 U.S.C. §§ 3131-3134, in the name of The United States of America for the use and benefit of Gecon Construction Incorporated, to recover payment for labor and materials furnished by Gecon Construction Incorporated in connection with two federal construction projects of the USDA Forest Service SPOC East, located at El Yunque National Rainforest in Rio Grande, Puerto Rico, and also asserts additional federal and state law causes of action for breach of contract, equitable estoppel, unjust enrichment, and damages.

2.　This Court has jurisdiction under 28 U.S.C. § 1331, 1352 & 1367; and 40 U.S.C. § 3133.

-- 1 --

3. Venue is proper in this district under 28 U.S.C. § 1391(b) as the projects that are the subject of the Complaint are located in this district.

## II. Parties

4. Plaintiff Gecon is a Georgia for-profit corporation whose address and principal office is 1557 South Broad Street, Monroe, GA, 30655.

5. Gecon is a first-tier subcontractor to prime contractor Visionary Construction, Inc., d/b/a Visionary Services, for the federal projects that are the subject matter of this action.

6. Gecon furnished labor and materials for the construction of two federal projects known as (1) "2017 PR FS Hurricane Irma (Trails) Repair Project," Gov. Contract # 12441922C0005 (the "El Yunque Project") (original contract amount $3,122,057.30), and (2) "Rehabilitation of La Mina and Big Tree Trail," Gov. Contract # 12445222C0014 (original contract amount $4,308,406.23) (the "La Mina Project"). Collectively, the El Yunque Project and the La Mina Project are referenced herein from time to time as "the Projects."

7. Defendant, Visionary Construction, Inc., d/b/a Visionary Services ("Visionary"), is or was the prime contractor for the El Yunque Project and for the La Mina Project. Visionary is a Georgia for-profit corporation whose address and principal office is 3350 Riverwood Pkwy., Ste. 1900, Atlanta, GA 30339.

8. On information and belief, Defendant, Great Midwest Insurance Company, is the surety on payment and performance bonds furnished by Visionary in connection with the El Yunque and La Mina Projects. Its address and principal office are located at 800 Gessner Road, Ste. 600, Houston, TX 77024.

9. On information and belief, Defendant, First Standard Asurety, LLLP, is the surety on payment and performance bonds furnished by Visionary in connection with the El Yunque and

La Mina Projects. Its address and principal office are located at 2090 Dunwoody Club Drive, Suite 106-126, Atlanta, GA 30350.

10. Defendant, Surety Company "A," whereabouts unknown, is a fictitiously named entity which may be liable for all, or part, of the amounts claimed herein.

11. Defendant, Insurance Company "B," whereabouts unknown, is a fictitiously named entity which may be liable for all, or part, of the amounts claimed herein.

### III. Facts

12. Plaintiff Gecon and Defendant Visionary entered into a Third Party Subcontract Agreement with effective date of December 28, 2023 (the "Subcontract"), under which Gecon agreed to provide management and supervision to Visionary for the El Yunque and La Mina Projects in a contractor team arrangement as set forth in Part 9.601(2) of the Federal Acquisition Regulations ("FAR"), including, without limitation, Gecon providing personnel to supervise the operations in performance of Visionary's contract obligations on the Projects, and Gecon having authority to hire and fire subcontractors and employees working on the Projects. A true and correct copy of the Subcontract is attached as Exhibit "1."

13. The Subcontract provides, among other things, as follows:

   a. that Visionary agreed to pay Gecon 50% of net profit of the remaining combined contract balance in the Projects as of the date of the Subcontract, which combined contract balance was recognized in the Subcontract to be in the amount of $8,063,773.41 at that time;

   b. that only direct expenses incurred after the effective date of the Subcontract would be considered as part of the cost of the Projects in determining net profit on the Projects pursuant to this Agreement;

  c. that Visionary agreed to pay Gecon a draw in the amount of $65,000.00 every two weeks towards the net profit, beginning on Jan. 12, 2024;

  d. that the balance owed by Visionary to Gecon on the 50% of net profit of the remaining combined contract balance in the Projects as of the date of the Subcontract would be calculated and paid at the end of the project;

  e. Visionary would pay Gecon $5,700,000.00 for Gecon's subcontractor; and,

  f. Visionary would reimburse Gecon for expenses it incurred on the Projects.

14. Plaintiff Gecon promptly began performing its obligations under the Subcontract (and, indeed, had begun materially assisting Visionary even prior to the Subcontract's effective date), incurring expenses for labor, materials, subcontractors, management, supervision, subcontractor coordination, and other expenses related to the management and performance of the Projects.

15. Plaintiff Gecon was purportedly summarily terminated by Visionary by letter received by Gecon on January 26, 2024, without prior notice of default, without justifiable cause, and contrary to the express terms of the Subcontract.

16. At the time of Visionary's unauthorized and illegitimate termination of Gecon, and to the present, and despite demand made, Gecon was not and never has been paid by Visionary for Gecon's incurred expenses for labor, materials, management, supervision, subcontractor coordination, and other expenses related to the management and performance of the Projects, in a total amount to be proven at trial.

17. At the time of Visionary's unauthorized and illegitimate termination of Gecon, and to the present, and despite demand made, Gecon was not and never has been paid by Visionary for the two (2) initial two-week draws for its overall fee for its management and

supervision services under the Subcontract, each in the amount of $65,000, that came due pursuant to the terms of the Subcontract, in the collective amount of $130,000, which amount is owed to Gecon as damages.

18. As a result of Visionary's unauthorized and illegitimate termination of Gecon, and to the present, and despite demand made, Gecon was not and never has been paid by Visionary for Gecon's promised fee pursuant to the Subcontract of 50% of the remaining net profit in the Projects as of the date of the Subcontract, which promised fee Gecon estimates to be $1,141,651.62 subject to discovery in this matter and proof at trial, which amount is owed to Gecon as damages.

19. As part of Visionary's unauthorized and illegitimate termination of Gecon, Visionary reversed the charges on several credit card payments made to Gecon that Visionary knew or should have known at the time the payments were made to Gecon were funds being provided to Gecon for immediate pass-through payments to Gecon's subcontractor, pursuant to the terms of the Subcontract.

20. Because Gecon had immediately passed through such payments from Visionary to Gecon's subcontractor according to the purpose of the payments when received from Visionary, Visionary's reversal of the credit card payments caused the amount of those funds that Gecon had already paid over to its subcontractor to be taken from Gecon's bank account, resulting in a substantial deficit in Gecon's operating funds as a business that caused damages to Gecon in an amount to be proven at trial.

21. Moreover, Visionary's unjustified and illegitimate reversal of the charges caused Gecon further damages in the form of attorneys' fees incurred to pursue the nullification of Visionary's reversals so that Gecon could recover the sums wrongfully deducted from Gecon's

accounts due to Visionary's initial reversals of the credit card payments, in an amount to be proven at trial.

### IV. First Cause of Action

### (Miller Act)

22.     All factual allegations recited above are incorporated here by reference in their entirety.

23.     Pursuant to Miller Act, the Plaintiff is entitled to recover the agreed upon amount of 50% of the net profit of the Project, set forth above as damages, in a total amount to be proven at trial, jointly and severally, which the Plaintiff estimates to be $1,141,651.62.

24.     Pursuant to Miller Act, the Plaintiff is entitled to recover its expenses incurred on the Project, set forth above as damages, in a total amount to be proven at trial, jointly and severally.

25.     Alternatively, the Plaintiff is entitled to recover a reasonable amount for expenses incurred in labor, materials, management, supervision, subcontractor coordination, and other expenses related to the management and performance of the Projects, in a total amount to be proven at trial.

### V. Second Cause of Action

### (Breach of Contract)

26.     All factual allegations recited above are incorporated here by reference in their entirety.

27.     Plaintiff is entitled to recover the amounts set forth above as damages, in a total amount to be proven at trial, jointly and severally, resulting from Visionary's unauthorized and illegitimate termination of the Subcontract and unjustified and illegitimate reversal of the

charges.

## VI. Third Cause of Action

### (Equitable estoppel and unjust enrichment)

28. All factual allegations recited above are incorporated here by reference in their entirety.

29. Defendants are equitably estopped from denying that Plaintiff is due the damages set forth above.

30. Defendants have been unjustly enriched to the extent that Plaintiff's damages set forth above have not been paid to Plaintiff.

31. Plaintiff is entitled to recover the amounts set forth above as damages, in a total amount to be proven at trial, jointly and severally, pursuant to the doctrines of equitable estoppel and/or unjust enrichment.

## **Prayer for Relief**

WHEREFORE, Plaintiff prays for the following relief:

a. Judgment against Defendants, jointly and severally, for the payment and/or reimbursement of all amounts set forth above as damages, including in such amounts as to be further established through discovery and proven at trial;

b. Prejudgment and post-judgment interest at the statutory rate;

c. Reasonable attorney's fees and costs; and

d. Such other and further relief as the Court deems just and equitable.

      Respectfully submitted this 24th day of January, 2025.

                                        /s/Rafael A. Flores-Ortiz
                                        RAFAEL A. FLORES-ORTIZ
                                        USDC-PR NO. 308504

BAUZÁ BRAU IRIZARRY SILVA
PO Box 13669
San Juan, Puerto Rico  00908
Ph. (787) 710-8262
Email: rafael.flores@bioslawpr.com
*Counsel for Plaintiff Gecon Construction Incorporated*